*In re* BRACMADFAR *et al.*

(*Circuit Court, S. D. New York.* February 23, 1889.)

IMMIGRATION—ACT AUG. 3, 1882—DETENTION AND RETURN—HABEAS CORPUS.
 Under section 2 of the act of August 3, 1882, (22 St. at Large, 214,) immi-
 grants cannot be detained or sent back except upon an adverse report made
 to the collector by the commissioners themselves, or by some person by them
 authorized, after an examination and a finding that the persons are within
 some of the prohibited classes. The report made by the secretary of the
 board upon the action of a subordinate not authorized to act finally in the
 matter, and without further authority from the commissioners, or either of
 them, is insufficient; and upon *habeas corpus*, the above facts appearing, and
 on subsequent examination by one of the commissioners the immigrants being
 found not within either of the prohibited classes, they were ordered to be dis-
 charged, and allowed to land.

Writ of *Habeas Corpus* for the Release of Detained Immigrants.

On the 21st of February, 1889, 21 Armenian immigrants arrived at
this port by the Netherlands steamer Leerdam.    On the following day
the secretary of the commissioners of emigration sent a letter to the col-
lector, stating that he was directed by the commissioners to report these
immigrants, naming them, as persons "liable to become a public charge."
The collector thereupon directed that the immigrants be not allowed to
land, but returned by the Leerdam, which was intending to sail on her
return voyage on the 23d or 24th.    The immigrants were detained in the
mean time at Castle Garden under the regulations of the secretary of the
treasury, which provide that their custody there shall not be deemed a
landing from the ship.

On the 23d a writ of *habeas corpus* was issued, returnable forthwith, upon a petition setting forth that the report had been made without any examination of these immigrants by any of the commissioners, and without authority. The writ was addressed to the collector, and to the commissioners of emigration. The return of the collector set forth a report from the commissioners stating that the persons were "liable to become a public charge," and that they were accordingly held for return, and landing refused. The return of Commissioner Stephenson, on whom the writ was also served, stated that the report had been made without authority of the commissioners, and without examination of the immigrants by any of the commissioners. A traverse was filed to the return of the collector, substantially to the same effect.

*Charles Steckler*, for petitioners.

*S. A. Walker*, U. S. Dist. Atty., and *W. W. Smith*, Asst. Dist. Atty., for the collector.

BROWN, J., (*after stating the facts as above.*) Section 2 of the act of August 3, 1882, (22 St. at Large, 214,) under which these immigrants are detained, provides that "it shall be the duty of such state commission, board, or officers so designated, to examine into the condition of passengers arriving at the ports within such state in any ship or vessel, and for that purpose all or any of such commissioners or officers, or such other person or persons as they shall appoint, shall be authorized to go on board of and through any such ship or vessel; and if, on such examination, there shall be found among such passengers any convict, lunatic, idiot, or any person unable to take care of himself or herself without becoming a public charge, they shall report the same in writing to the collector of such port, and such persons shall not be permitted to land." The report to the collector, made in this case by the secretary of the board, purported to be the act of the board. It was regular upon its face. Properly it should have stated that the persons were "unable to take care of themselves without becoming a public charge," and not merely that they were "liable to become a public charge." But, waiving this irregularity of form, which, however, I do not mean to say is immaterial, the report was otherwise presumptively sufficient to require the collector to detain these immigrants and not permit them to land.

The secretary of the board and Commissioner Stephenson were both sworn as witnesses upon the issue raised by the traverse to the collector's return; and from their testimony it appears that one of the subordinate employes who examined the passengers by the Leerdam returned a list of these persons, with certain brief affidavits, with his oral report to the secretary, that he thought these persons ought not to be admitted, and that the secretary's report in writing to the collector was based upon this subordinate's report only; that the secretary had never been authorized by the board to make adverse reports to the collector until such affidavits taken by the subordinate, with his recommendation thereon, had been first submitted to, and examined and approved by, one of the commissioners; and that in the present case no such examination had been pre-

viously made by any of the commissioners, or any authority to report to the collector given. It further appears that Commissioner Stephenson, after the report had been made, did examine carefully into the condition of these 21 persons; that he found them to be able-bodied, healthy, intelligent, and much above the average of immigrants ordinarily allowed to land; nearly all with friends in this city; some with considerable means; a few with only a little money in their pockets, but with baggage containing articles designed for trade; and all of them entitled, upon admission, to the further sum of $10 each, which was in the hands of the steam-ship company, being a prepayment of their return passage in case they should be refused a landing; and that, in his judgment, they were able to take care of themselves without becoming a public charge.

Upon this testimony it is plain that the intention of the statute had not been complied with at the time the report was made to the collector, and that the report was made by the secretary without authority. The question whether immigrants should be allowed to land, or be sent back, is one that cannot be allowed to be determined except under the responsibility which the statute imposes. It must be either by the board of commissioners, or by some one of them, or by some person whom the board of commissioners has authorized to pass finally upon the question. It is sometimes a matter of no small difficulty to adjust the claims of humanity and justice to the faithful enforcement of the law, and to determine justly whether particular persons come within the prohibited classes. The commissioners, as appears from the evidence, have never devolved upon any subordinate the right to determine this question, or whether an adverse report shall be made to the collector. The report in this case must therefore be treated as a nullity; and as a sufficient examination appears to have been made by one of the commissioners to show that the persons ought not to be detained, and no further examination appearing to be needed or desired, they should be discharged, and allowed to land. *In re Cummings*, 32 Fed. Rep. 75; *In re O'Sullivan*, 31 Fed. Rep. 447.